COVELL
v.
WESTON.

Covell *against* Weston and others, heirs of Weston.

*Though a matter of defence arising after the commencement of the suit, cannot be pleaded in bar of the action generally; yet it may be pleaded in bar of the further maintenance of the suit; and a judgment recovered since the action was brought, may be pleaded by executors in bar of the action.*

*Heirs being liable to creditors of their ancestor, in respect to lands descended to them, no alienation by them, after suit brought, can protect them, or the purchaser. But where the land is sold, by order of a Court of Probates, or Surrogate, on the application of the executor or administrator, for want of* sufficient personal assets, under the statute; (sess. 36. ch. 79. s. 23, 24, 25. 1 *N. R. L.* 444—451.) such sale being declared valid and effectual against the heirs and devisees, and all persons claiming by, from, or under them, is, also, valid and conclusive against a creditor who had brought his action against the heirs, and may be pleaded in bar of the action. Such creditor, by bringing his action against the heirs, does not acquire a *lien* upon the land descended to them; his *lien* is merely on the *heirs*, in respect to the land, so that they cannot aliene it after the action brought, and defeat his claim. The heir of an intestate, takes the land of his ancestor, subject to the right of the administrator, to apply to a Court of Probates, or Surrogate, for the sale of it, in order to pay debts; and when the power given by the statute, to the Court of Probates, for that purpose, has been executed, the title of the heir is gone, and he has nothing by descent.

THIS was an action of *assumpsit* against four defendants, two of whom were returned, not found. The declaration, which was filed in *May* term, 1821, stated, that *Stephen Weston*, of whom the defendants are heirs, in his lifetime, to wit, on the 29th of *October*, 1808, at, &c., made a certain instrument in writing, &c., to the plaintiff, and thereby promised to pay to the plaintiff 200 dollars, in neat stock, without interest, if the title to a certain tract of land in *Junius*, being 100 acres in the north-east corner of lot No. 41., in *Junius*, should fail ; the said sum to be paid when the title should fail, and for which the said *Stephen W.* admitted he had received a full compensation. The plaintiff averred, that the title to the land mentioned, did fail, on the 22d of *November*, 1819, of which the defendants had notice, &c. By reason whereof, and by force of the law in such case made and provided, the defendants, as heirs of *S. W.*, became liable to pay, &c., and in consideration of such liability, &c., promised the plaintiff to pay to him the said sum of 200 dollars, &c. The declaration, also, contained counts for money paid, and money lent, to the ancestor of the defendants, and money had and received to the use of the plaintiff.

The two defendants, who were impleaded with the others, pleaded, 1. *Non-assumpsit.* 2. That the plaintiff ought not further to have and maintain his action, &c., because, on the 1st of *January*, 1815, the said *Stephen Weston* died intestate, in the state of *Ohio*, and his estate was, afterwards,

found indebted to divers persons in a large sum of money, to wit, in the sum of 2,223 dollars and 79 cents; that after the death of *Stephen Weston,* to wit, on the 11th of *February,* 1818, letters of administration were issued by the Court of Probates of this state, to *Polly Weston;* and that in pursuance of the statute in such case made and provided, *P. W.* proceeded to administer upon the estate, and expended and paid out the whole of the goods and chattels, credits and effects of *Stephen W.,* at the time of his death, in her hands to be administered, leaving still due from the estate, a large sum of money, to wit, the sum of 1,937 dollars and 88 cents; that, afterwards, to wit, on the 4th of *September,* 1821, at a Court of Probates, in pursuance of the act in such case made and provided, (setting out the proceedings,) it was ordered and adjudged by that Court, that the whole of the estate of *Stephen W.,* consisting of a farm in the town of *Pompey,* (describing it,) should be sold to pay the debts due from the intestate's estate; that *P. W.,* the administratrix, in pursuance of such order, afterwards, on the 5th of *November,* 1821, sold at public auction all the real estate of the intestate, to *Charles Wailis,* the highest bidder, for 602 dollars, which sale was, afterwards, on the 20th of *December,* 1821, confirmed by the Court of Probates, and the administratrix directed to convey the estate, on payment of the purchase money; and the defendants averred, that the purchase money was paid on the 19th of *January,* 1822, into the Court of Probates, according to the act, and that the administratrix executed a deed of conveyance to the purchaser; and the defendants averred, that no lands or tenements other than the premises so sold by the administratrix, ever came to them, or either of them, by descent from *Stephen Weston,* with a verification. To this plea there was a general demurrer, and joinder in demurrer.

*L. F. Steevens,* in support of the demurrer, contended, 1. That the plea showed the certainty of assets descended, when the suit was commenced, and when the lien of the plaintiff became perfect. The statute (1 *N. R. L.* 316. sess. 36. ch. 93.) gives every creditor, whether by simple contract or specialty, an action against the heirs of the

debtor; and the second section declares, that in all cases where any heir is liable to pay the debt of his ancestor, in regard of any lands, &c., descending to him, shall aliene the same before suit brought, such heir shall be answerable for such debt, to the value of the land so aliened ; in which case, all creditors shall be preferred, as in actions against executors and administrators. The creditor who first commences his suit, acquires a *lien*, which has relation to the issuing of the writ, and must be first satisfied by the heirs. (*Bac. Abr.* tit. *Heirs, F. Co. Litt.* 102. *Carthew.* 245.) The purchaser at public auction, must look to see if there is a lien. (18 *Johns. Rep.* 441.)

2. The heirs cannot avail themselves of a sale by the administratrix; for they ought to have appeared before the Court of Probates, and objected to the sale.

3. The plea is insufficient, and bad in law.

*Cady,* contra. The act relative to the Court of Probates, &c., (sess. 36. ch. 79. s. 23, 24, 25, 26. 1 *N. R. L.* 444—450, 451.) declares, that all sales of real estate, made by order of the Court of Probates, or Surrogate, and the conveyances for the same, shall be valid and effectual against the heirs and devisees of the testator or intestate, and all claiming by, from, and under them. From the time administration is granted, the power of alienation by the heir is suspended. It is said, that a commencement of a suit against the heirs, creates a lien on the estate descended, which cannot be impaired. Suppose a judgment and a sale, would not the judgment creditor claim by, from, or under the heir ? Again, the act (s. 23.) requires all persons interested, pursuant to public notice given for that purpose, to appear before the Court of Probates, or Surrogate, to show cause against the sale. Now, if the plaintiff, by commencing his suit, acquired a *lien* on the estate, he had an interest in it, and it was his duty to have appeared before the Court of Probates, alleged his interest, and showed cause. If the Court had decided against him, he would have his remedy by *appeal*, which is given by the statute. The *British* statutes are not applicable to a case like the present. In the cases referred to by the plaintiff's counsel,

the lien, if any, by action, is where the suit is commenced by original writ, and the judgment under the statute is general, and destroys any lien. Again; this is a contest between creditors, and the statute gives a preference to the first *judgment*, not to the first action; for it says, the preference against the heirs shall be the same as against executors and administrators.

The administratrix, as a trustee for all the creditors, commenced the proceedings in the Court of Probates, for the purpose of paying all; and the proceeds of the sale were brought into the Court as a *fund*, to be distributed equally among all the creditors, *pari passu*. The power of the administratrix commenced from the death of the intestate; and the exercise of that power defeats any action brought by a creditor.

All the lands which descended to the heirs, have been sold by the judgment of a Court of law, and by virtue of the statute, without any agency of the heirs, who had no power to prevent it.

Again; this suit was commenced against four heirs, two of whom have not been brought into Court. All the heirs must be brought into Court. (6 *Johns. Rep.* 59.) The statute does not provide for proceeding against one heir, when it appears on the face of the pleadings, that there are more than one.

Again; in the first count, the contract is void for want of a consideration. The note is for *neat stock*, and no breach is alleged; and in the second count, the promises are laid to have been made by the intestate, not by the heirs.

*Steevens*, in reply, said, that he did not ask for any judgment, which could prejudice the heirs, if they had pleaded correctly. The plaintiff seeks only a judgment against the lands of their ancestor, which descended to them. The plea admits that land descended. As to the plaintiff's claim upon that land, it can be litigated with the purchaser. The sale, though effectual as against heirs and devisees, and those claiming under them, is not conclusive against the plaintiff.

ALBANY,
January, 1823.

COVELL
v.
WESTON.

Again; the statute (s. 23.) declares, that when any executor or administrator shall discover, or suspect, that the personal estate of such testator or intestate is insufficient to pay his debts, the executor or administrator shall, as soon as conveniently may be, deliver an account of the personal estate and debts to the Court of Probates, or to the Surrogate, and request his aid in the premises. Now, nearly four years elapsed after the administration was granted, before any application was made to the Court of Probates, for a sale of the real estate. This was an unreasonable time. As to the objection, that all the heirs are not brought into Court, we say, that the heirs are joined within the meaning of the statute. Heirs are debtors by law. (5 *Co.* 11.) They may be declared against in the *debet et detinet*. If one joint debtor is made to pay the whole, he may call on the others to contribute. The acknowledgment of one joint debtor, of the existence of a debt, so as to take a case out of the statute of limitations, has been held to apply to executors, heirs, and devisees. (15 *Johns. Rep.* 3, 4.)

SPENCER, Ch. J. delivered the opinion of the Court. The plaintiffs have taken three objections to the plea; 1st. That it shows the certainty of assets when the suit was commenced, at which time, it is urged, the plaintiff's lien became perfect; 2d. That the heirs cannot avail themselves of a sale by the administrator, because, they ought to have appeared before the Judge of Probates, and objected to a decree; and, 3. That it is bad in law.

If we are to understand, by the first objection, that the plea is bad, because it sets forth the occurrence of events happening after the action brought, but before the plea was put in, there is no foundation for the objection. In *Le Bret* v. *Papillon,* (4 *East's Rep.* 502.) the plea was in bar, that the plaintiff was an alien enemy; replication, that at the time of exhibiting his bill, as well the plaintiff, as the persons then exercising the powers of government in *France,* were at peace and amity with the king of *Great Britain,* and his subjects. To this the defendant demurred. The Court were of opinion, that the plea was ill pleaded; that it should have been, that the plaintiff ought not *further* to

have and maintain his action, and that no matter of defence arising after action brought, could properly be pleaded in bar to the action *generally*. It was distinctly admitted by the Court, that a plea of judgment recovered, by executors, in bar of the action, subsequent to the suit brought, might be pleaded generally in bar ; and on the principle, that the judgment of the Court need not be in the words of the plea, but that they had the power to give the proper judgment. In that case, they gave judgment, that the plaintiff be barred from further having and maintaining his action. There can be no stronger objection to this plea, which is, that the plaintiff ought not further to have and maintain his action, put in before any other plea had been interposed, than there is to a plea *puis darrein continuance*. Had the defendant pleaded before the proceedings before the Judge of Probates terminated, he might have relinquished such plea, and pleaded as he has now done.

The second objection to the plea is founded on the position, that the plaintiff having acquired a lien on the lands descended, by the commencement of his suit, his lien is not affected by the subsequent sale under the decree of the Judge of Probates ; or, if affected by that proceeding, the defendants are responsible for it, on the ground, that they might successfully have opposed the decree which was made, by showing the commencement and pendency of this suit. At common law, if the heir had *bona fide* aliened the lands which he had by descent, before an action was commenced against him, he might discharge himself, by pleading that he had nothing by descent at the time of suing out the writ, and the obligee had no remedy at law ; but, now, by the statute of 3 and 4 *W. & M.* ch. 5. s. 5., and by the 2d section of our statute, (1 *N. R. L.* 317.) heirs aliening lands before suit brought, are liable for the value. So, that since the statute, an heir having lands by descent, is liable in respect to such lands, whether he has aliened or not ; and in this sense, and no other, has a creditor of the ancestor any lien on the lands descended. An alienation by the heir, after suit brought, cannot protect the heir, or even a purchaser from him. In this case, the heirs have been passive ; the lands descended have been conveyed by regular pro-

ceedings before the Judge of Probates ; their title has been defeated, not by their act, but by the act of the law. The statute (1 *N. R. L.* 450, 451.,) provides, that when an executor or administrator shall discover, that the personal estate of the testator or intestate, is insufficient to pay the debts of the testator or intestate, he shall apply for the sale of the real estate whereof the testator or intestate died seised ; and it declares, that the conveyances for the same shall be valid and effectual against the heirs and devisees, and *all claiming by, from, or under them.* What claim has the plaintiff to the land of the intestate ? Certainly none which attached on the land in the life time of the intestate. His claim is upon the heirs, in consequence of the indebtedness of the intestate, in respect to the lands which have descended to them. If, therefore, he has any claim, it is by, from, or under the heirs ; and we perceive that the title of the purchaser, under the sale by the decree of the Judge of Probates, is paramount to any such claim. The error into which the plaintiff's counsel has fallen, is in supposing that the creditor has an actual lien on the land. He has a lien on the heirs, in respect to the land, so that they cannot convey it, after action brought, to defeat his claim ; but he has no lien on the land itself. By the laws of *Connecticut,* the real estate of an intestate is liable to be sold for the payment of his debts, where there is a deficiency of personal estate. The administrator has no right to meddle with the real estate by virtue of his general power, but derives this special authority, as with us, from the order of the Court of Probates, which possesses jurisdiction to direct a sale, upon a proper application, and proof of the deficiency of the personal estate. In the case of *Ricard* v. *Williams,* (7 *Wheat. Rep.* 114.) which came before the Supreme Court of the *United States,* upon a case from *Connecticut,* in which there had been a sale, under the order of the Judge of Probates, of real estate, the question was, whether the purchaser under that sale was entitled to claim and hold it against the *bona fide* purchaser of the heir ; and the Court held, that the power of sale, when ordered, did not convey any estate in the lands to the administrator ; that he derived an authority to sell from the Court ; and that the estate passed to the purchaser, upon his entry into the

land, by operation of law, so that he is in under the estate of the intestate, and it was aptly compared to a power given by a will to executors to sell an estate. In such case, the lands descend, and the interest of the heir is liable to be defeated by a sale by the executors. In such a case, if the heir was to be sued for a debt of the ancestor, and prior to the plea the executors should sell, could it be pretended that the heirs have any thing by descent? So, here, the heirs took subject to the right of the administratrix to apply to the Court of Probates to sell the real estate to pay debts, and when that power is executed, and a sale has taken place, the title of the heir is gone, and he has nothing by descent.

Nor could the heirs have made any successful opposition before the Court of Probates. They could have shown that they were sued for a debt of the intestate ; but the answer would have been, that the event had happened when the lands could be sold for the payment of all the creditors, *pari passu.*

This view of the case renders it unnecessary to consider the objections made by the defendant's counsel, to the regularity of proceeding against a part of the heirs only, and to the sufficiency of the declaration. The plea itself may not be formal, but the demurrer is general, and no objections have been taken to the plea.

Judgment for the defendants.