WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.
January, 1879.

## JACKSON v. HOLLADAY.

*In the matter of the estate of* MARY ANN HOLLADAY,
*deceased.*

Where the testatrix died seized of real estate which was mortgaged, and
the executor, the devisee of the property, paid off those mortgages with
money raised by new mortgages, and the estate proved insufficient to
pay the debts of the testatrix, *Held* that an order directing the property
to be sold for their payment, subject to the amounts which would have
been due on the several incumbrances if they had not been paid, could
not be issued by the Surrogate, since it assumed the power to ascertain
and adjudicate those amounts, and to pass upon any contention which
might arise in regard to them, a jurisdiction not possessed by the
Surrogate.

Under the provisions of the Revised Statutes (2 *R. S.*, 104, § 22) the penalty
of the bond given on such sale must be double the value of the property
to be sold, and this value may be ascertained by other proof than the
allegations of the petition, and where the evidence warrants, and no
·objection is taken, a less value than that alleged therein, may be
established as the basis for fixing the penal sum in the bond.

THE deceased was the wife of Ben Holladay, and
died in September, 1873, seized of a house and lot in
29th street, in the City of New York, and also of a
tract of land consisting of some 700 acres in West-
chester County, known as the "Ophir farm." At the
time of her decease there were mortgages on this
property amounting to about $70,000. She left a
will by which she devised it to her husband. The
will was shortly after admitted to probate, and her
husband, as executor, received letters testamentary in
March, 1874. On the 31st December, 1873, he, as
devisee and owner, gave a mortgage on the property

so devised for $100,000 to the Mutual Life Insurance Company of New York; and, in May following, gave another mortgage for a like sum, which is now held by August Belmont, and out of the moneys so raised, paid off the mortgages which were liens at the time of the death of the testatrix. He rendered an account as executor, showing that the assets of the testatrix were insufficient to pay her debts, and this proceeding was instituted to sell the real estate for the purpose. In the petition the value of the Ophir farm was stated to be $300,000, and the city property $20,000. At the proper time the applicants proceeded to prove their claim, which, after some contest, was finally established at $1,757.45, with interest from September 1st, 1873. During the progress of the hearing it was proven, among other things, and without objection, that the amount of the mortgages on the Ophir farm, with interest to January 24th, 1879, would have been $62,424.11, and that the amount paid to extinguish that on the 29th street property was $20,700. It was also shown, without objection, that the farm had been sold for taxes since the death of the testatrix, to the said Life Insurance Company, and leases to it, duly executed by the town supervisor. It was also proved that the value of the Ophir farm is about the amount due on the mortgage thereon, to wit, $129,759.46, and that of the city property, over and above the $20,700, was merely nominal, or about $200.

The other facts appear in the opinion.

EVARTS, SOUTHMAYD & CHOATE, *and* T. T. SHERMAN, *for the petitioners.*

JACKSON *v.* HOLLADAY.

SHIPMAN, BARLOW, LAROCQUE and MCFARLAND, *for the executor and devisee.*

HALL, BROWN & WESTCOTT, *and* HENRY E. DAVIES, *for the Mutual Life Ins. Co.*

MILLER & PECKHAM, *for August Belmont.*

THE SURROGATE.—Aside from any question of title which might spring from the introduction of the tax leases, and without regard to the legal effect of the fact that the devisee paid off the mortgages existing at the death of the testatrix, and which counsel have not presented for consideration, but seem to have waived, I am asked to make an order directing the property to be sold subject to the amounts which would have been now due on the several incumbrances if they had not been paid. To do so would be asserting the power of this court to ascertain and adjudicate those amounts, and, if there happened to arise any contention in regard to them, to hear, try and determine the same. This is not within the province of this court. Section 8, 2 *R. S.*, 101, provides that the Surrogate, at the hearing, shall proceed to hear and examine the allegations and proofs of•the executors or administrators applying for the authority to mortgage, etc., and of all persons interested in the estate, who shall think proper to oppose the application. Section 10 points out what questions of fact may be litigated on such a proceeding, by any heir or devisee, or person claiming under them, to wit: 1st, as to the proper application of the assets; 2d, as to the validity and legality of any debts; 3d, as to the debts being barred by the Statute of Limitations. These seem to limit the power of this court to the

trial and adjudication of such questions only. But it is claimed that the power may be found in the 32d section, which is as follows: " Every. sale and conveyance made pursuant to the provisions of this title, shall be subject to all charges by judgment, mortgage or otherwise, upon the lands so sold, existing at the time of the death of the testator or intestate." This is a mere declaration as to the effect of the sale, and confers. no power whatever upon the court. The revisers, in their notes to 3 R. S. (2d ed.), 648, say, this section is " new in form and declaratory of the existing law, § 23, 1 R. S., 450, 20 Johns., 414." Of course, this court can exercise no power in the premises not conferred by the statute. I must,. therefore, decline to incorporate in the order the desired provision.

It is also urged that the bond required by the statute to be given in anticipation of the sale should be in a penalty double the value only of the property in excess of the incumbrances. This would fix the penalty at about $400. But the 22d section (2 R. S., 104), provides that the penalty of the bond shall be " double the value of the real estate ordered to be sold." This language is plain and unmistakable. It leaves the court no discretion in the premises. The hardship in particular and exceptional cases furnishes no reason for seeking to evade its provisions. The statute requires the value of each parcel to be inserted in the petition. This has been done. Usually these alleged values furnish the means of arriving at the proper amount of the penalty; but as the values are allegations which may, under the 8th section, be examined

into, and as proofs have been offered contradicting the values as fixed in the petition, I think I must take it as it has been proved by the witnesses.   The penalty is therefore fixed at $301,119.

Inasmuch as the counsel for the parties are substantially in accord as to the substance of the order and the amount of the penalty of the bond, I very much regret my inability, under the statute to comply with their wishes.   It is needless to speculate as to the validity of the title, which, under such an order, the purchaser would obtain.

The order must be entered in the usual form.