Tilghman C. J.
This is an ejectment brought by Jesse Suckle and Jane his wife, the daughter of Joseph Brownlee deceased, to recover a parcel of land belonging to the estate of the said Brownlee, which was sold during the infancy of his daughter by order of the Orphan’s Court of Westmoreland county in the year 1787. The cause turned upon the validity of this sale, and the first error assigned is, that the court below permitted evidence to be given of the sale, without proof that letters of administration had ever been granted on the estate of Joseph Brownlee. This point was very properly abandoned, on the argument in this court, because it appears by the record, that very strong evidence was given of the granting of letters of administration which had been lost.
2. The second error is, that the Orphan’s Court ordered a sale, before the administrator of Brownlee had settled his administration account. This point was also' abandoned, because our act of assembly does not require that the administration account should be settled, but only that the administrator should return an inventory and appraisement, and exhibit «n account on his oath, of all the intestate’s debts *7 which have come to his knowledge. I speak of the act of 1T64, under which these proceedings were had. But as the' counsel for the plaintiff raised this point on the authority of the case of the Lessee of Larrimer and wife against Irvin, cited by me, in delivering my opinion in Messinger, et al. against Kintner, 4 Binn. 104, it is necessary in .order to avoid misapprehension,, to take notice of that case. In the manuscript note with which I had been furnished when I delivered my opinion, C. J. M‘Kean is reported to have said, that the decree of the Orphan’s Court was void, “ because at the ‘‘ time of making it, no administration account was settled; “ and it appeared, before the sale, that the intestate’s per- * sonal estate was more than sufficient to pay his debts.” It Could not be fairly inferred from these words, that the single circumstance, of the account not having been settled, would, in the opinion of the Chief Justice, have avoided the decree, The other circumstance (the sufficiency of the personal estate to pay all the debts) is very material. But I have lately examined the manuscript of Judge Smith, who sat with C. J, M‘Kean in that cause, and it appears, that the court relied, not on the non-settlement of the administration account, but on other circumstances; and particularly on this, that before the purchaser, under the decree of the court, had paid his money, the administrator settled his account; by which it appeared that there was a surplus in his hands after paying all debts. So that this case of Larrimer. against Irvin contains nothing to sanction the principle that the settlement of the administration account is necessary previous to a decree for sale of the intestate’s land.
3. In the case now before us there were three different sales, in pursuance of three different decrees of the Orphan’s Court. The two first sales the plaintiff in error gives up, and confines his objection to the third. With respect to this, it is said, that the Orphan’s Court had no power to order a sale, because it was not made to appear to them that there were any debts unpaid. The administrator, in his petition for the third sale, sets forth, that there are debts remaining to be paid, but does not particularise them. And it appears by the final settlement of the administration account that there were debts unpaid, at the time of the decree for sale; so that in substance no injustice has been done. But granting, for argument sake, that there was such an omission in *8 the petition for a third salé as precluded the Orphans CóuM: from ordering a sale for payment of debts, the plaintiff in error jlas no cause for complaint on that head; because the' court below charged the jury to that effect, and left it to them to consider, whether under the circumstances 6f the case thé decree for sale might not be supported on the ground of maintenance of the infant child: and I have iio doubt but a decree for sale On this ground only would be good. The act of assembly authorises a sale-for the purpose of payingdebts, and supporting children. Now if a mail dies without leaving personal estate sufficient to pay his debts and support his minor children, there is no doubt but the court may order a sale to accomplish both objects ; and if several sales are ordered at different times, they are to be considered as parts of one transaction, viz. the raising of money to pay debts and support the children. So that if the money raised by the first and second sales in this case was so applied as to extinguish all the debts, still one object of the law, the maintenance of the infant, remained unattained, and therefore it was proper to order another sale. When it is contended that at each sale, it is necessary that there should be debts fo pay as well as children to support, the argument has too much subtlety. If all the sales were necessary to accomplish the objects of the acts of assembly, then they are all lawful, whether made at the same or different times, whether by virtue of one order of court or several. The case is reduced to this. The debts were all paid, and the child remained to be supported,., when the Orphan’s Court made the last order for sale. It does not appear, on the record, that the child had any other means of support: but this, as I understand the charge of the court, was left to the jury to say, “ whether under the cir- “ cumstances of the case there was, or was not, a sufficient “ ground for the exercise of the equitable discretion of the “ Orphan’s Court, in ordering the third sale.” The plaintiff in error says, that this was leaving to the jury a point of law, which ought to have been decided by the court. But it was not purely matter of law. Fact and law were intermingled. Of the fact the jury were to judge, and as the law depended on the fact, it might be left to them to consider the whole. It appears to me that the charge was as favourable to thé plaintiff in error as the evidence warranted, so that it is not for them to Gomplain of error. I am therefore of opinion, that the judgment should be affirmed.
*9 Yeates J.
The counsel for the plaintiffs in error have, during the argument, narrowed their pretensions to 85 acres, the remainder of the lands of Joseph Brownlee, deceased, sold under the order of the Orphan’s Court of 7th February, 1787. Herein they have acted wisely and judiciously. Nothing can be more evident from the vouchers referred to by the president of the Court of Common Pleas, than that John Guthrie was the rightful administrator of the .said Joseph Brownlee, and acted as such; and that in that character he petitioned the Orphan’s Court for three different sales of the land, and made returns thereof, and afterwards settled his administration account. In the disgraceful manner in which the then register performed the duties of his office, and the confused state of the records, added to the events of an Indian war, it is surprising that such strong proofs should be exhibited after the death of the administrator, by a purchaser claiming under these sales.
It is now admitted, that on the petition for the first and second sales there was a substantial compliance with the requisites pointed out by the 6th and 7th sections of the old law of 1705 3 that certain debts were stated which at those periods had come to the knowledge of the administrator, and a conscionable appraisement made of all the intestate’s personal estate whatsoever, verified by his oath: and that the . Orphan’s Court were authorised to order those two sales on account of the insufficiency of the personal estate to pay the debts and maintain the infant child. But it is objected, that the third sale was unauthorised by law, inasmuch as the specific debts which came afterwards to the knowledge of the administrator were not expressed in the last petition,-and the sale cannot be validated by ex post facto matter not-appearing on the record.
It is true the last petition is couched in general terms without descending to particulars: but it refers to the former proceedings, and states the insufficiency of the lands sold to pay the debts of the intestate and maintain and educate his infant child. In the chaos of loose papers found in the register’s office were discovered sundry proved accounts and receipts for debts, which, from the face of them, as well as their dates, could not be comprised in the former statements annexed to the two petitions, and in all human probability were laid before the Orphan’s Court on the 7th February¿ *10 1787, shewing, that the amount of the lands- sold added to the personal estate would not form an adequate fund to discharge the debts and support the child. But suppose this not to be the case, what would be the power of the court in such instance ? Unwilling to make a sacrifice of the lands of the intestate, they had decreed two sales by parcels ; but the purposes of their decrees were not answered, as is stated in the petition. The child of the intestate was then between five and six years old, and must be maintained. Until the proper means were supplied, the business was but half done. The daughter required immediate support, and was incapable of contraciting debts on the credit of the remnant of her father’s property. It will 'not be said she should be left to starve! I am clearly of opinion, the authority of the Orphan’s Court remained until the beneficial objects intended by the law could be fully accomplished ; and think the president was incorrect in submitting to the jury, whether there was or was not a sufficient ground for the exercise of the equitable discretion of the court in ordering the third sale. Real justice has been done here, although on erroneous principles. The Orphan’s Court were acting in their legitimate sphere, when they awarded the first and second sales; and their legal functions continued until the purposes of their decrees were answered. The several proceedings have been conducted with perfect good faith. There is not the slightest insinuation of fraud. The lands of the intestate were publicly sold at their full and fair value. His debts have been discharged; his daughter brought up : and her purpart of the surplus of the whole estate has been paitd to her guardian, and by him to her, upon her attaining her full age. The lands have been highly improved: valuable buildings •erected : and the purchasers under the decrees of a court of competent jurisdiction have held the peaceable possession above twenty-six years, and perfected their title by a patent.
In Snyder et al. v. Snyder, in the middle district, I expressed my sentiments at large, at the last term, upon sales made in pursuance of orders of the Orphan’s Court, and thought there was a strong analogy between such cases and, sales made by sheriffs under legal process. Purchasers reposing confidence in the judicial acts of courts vested with competent jurisdiction, are entitled to protection upon every principle of justice and sound policy; and when! no part of *11 their conduct appears tinged with fraud, it must be a-strong case indeed in which I should feel myself warranted to disturb them.
Upon the whole matter, my mind is amply satisfied that the judgment of the Court of Common Pleas of Westmoreland county should be affirmed.
Brackenridge J. concurred.
Judgment affirmed.