Mr. Chief Justice Sharkby
delivered the opinion of the court.
In 1820 the appellant’s intestate, William JB. Griffith and Mrs. Vertner, one of the appellees, were appointed administrator and administratrix, on the goods and chattels of Lyman Harding, who had died intestate, leaving his wife, now Mrs. Vertner, and an only son, as his distributees. The bill charges that the entire administration and management of the estate was left to Griffith, who presented to the Orphans’ court of Adams county, three accounts'of liis administration, two of which being annual accounts, were made out in his name alone. The third, being the final account and settlement of the administration, was made out as the account of both the administrator and administratrix, and in October, 1826, it was presented to the Orphans’ cdurt, where it was examined and allowed, and ordered.to be reported to the county court for final approbation and.allowance; and accordingly at the December term, 1826, of the county court, it was reported, the vouchers examined, and it was received, allowed and recorded as the final settlement of the estate. The bill also charges that Mrs. Vertner, one of the complainants, paid, to Winthrop S. Harding, the other distributee, his entire distributive share, and took from him a relinquishment and transfer of -his interest, by which it is alledged that the complainants acquired a right to the residue of the estate. It also charges, that in the several accounts there were errors and mistakes against the estate to the amount of about nine thousand dollars, for which errors and mistakes the complainants seek to open the administration accounts, and for relief for that amount against the estate of Griffith. The appellant, who was respondent in the court below, pleaded the final settlement and decree'of the county court, in bar to the relief, and answered the other portions of the bill. To this plea there was a demurrer, and thereon the chancellor decided the plea to be insufficient.
From this brief statement of the case, it is plain that the brain question is whether the complainants are concluded by the decree or order of the county court. This of course will depend on the power and jurisdiction of the court, and the nature of the adjudication. The judgment of a court of competent jurisdiction, directly made, is binding on parties and privies, except for fraud, which is not here charged. And this rule applies as well to the Orphans’ *738 or probate courts in this state, as to other courts. If then the county court of Adams county had jurisdiction of [he subject matter and of the persons, and exercised it by a final adjudication directly on the question sought to be examined by this bill, its judgment cannot be opened by bill for that purpose, or questioned collaterally. By the first section of the Orphans’ court law, Revised Code, 27, the Orphans’ court was established, and its powers defined. Jurisdiction was given to it to receive the probate of wills; to grant letters of administration; to appoint guardians to infants, idiots, lunatics, and persons non compos mentis; to examine and allow the accounts of executors,- administrators and guardians; “ with full jurisdiction of all testamentary and other matters, pertaining to an Orphans’ court or court of probate in their respective counties.” By the same act, the power to bring parties into court, and all other means or incidents necessary to carry out the jurisdiction are given. The right of appeal to the chancery or supreme court was secured. By the eighty-seventh section, the court was authorized to audit and allow all accqunts of executors, administrators and guardians, forty days notice being first given in. case of final account, that at a given term it would be presented for allowance, at which'time the account was open to be contested by any one interested, and the court authorized to hear the proofs, and decide accordingly, or it might, if necessary, refer the account to auditors for their investigation, on whose report the court was to decree as the justice of the case might require. This final jurisdiction was changed by the act of 1824, so far, as to require the Orphans’ court to make a report of all such accounts as might be presented, to the next term of the county court for final allowance, and by that court they were to be allowed in the same way that the Orphans’ court had previously made the allowances or decrees, and so the law stood at the time this settlement was made.
Now it is evident that every administration must be finally settled somewhere. The very object of an administration is to bring the whole personal estate to an adjustment preparatory to a distribution. The power conferred on'the Orphans’ court, in conjunction with the County court by the law as it stood at the date of this settlement, was ample; and these courts were created and organized with a view to the exercisé of this important *739 branch of jurisdiction. The jurisdiction then, possessed by the Orphans’ court in conjunction with the County court, was co-extensive with the jurisdiction which is now possessed by the Probate courts under the revised constitution. Being then conferred by law, it was perhaps not an exclusive jurisdiction, but it was at least ample, and the adjudications made by those Gourts on matters testamentary are not distinguishable in effect from those which have been made by the Probate courts under the present system. By repeated decisions of this court we have not only held that the Probate courts have exclusive original jurisdiction in testamentary matters, but that their judgments cannot be attacked or corrected except by appeal. The court, then, which passed on these accounts, had undoubtedly j'urisdiction; and if 'it exercised it by making a final adjudication, its judgment must be conclusive. The parties interested were entitled to an appeal, and that was the only mode by which the errors could be corrected.
The plea avers that legal notice was given, and that the. court passed upon the account, allowed it, and had it recorded as a final settlement of the estate. By the record which is made an exhibit, it appears that the account was regularly presented to. the Orphans’ court, and by that court ordered to be reported to the county court, which was done; and the account, after an examination of the vouchers or evidences of its correctness, was received and allowed, or approved as a final account. This was such an adjudication as 'the law seems to require. The judgment might have been more formal, but it is substantially good. It is in every particular like the order of court made in the case of Gildart’s heirs v. Starke, reported in 1 Howard, 450, which was held to be a sufficient judgment, and conclusive on all parties interested. The case.cited is a direct authority in the present case, and would be decisive without other precedents, but others may ’be cited to .the same effect. The case of McPherson v. Cunliff et al. 11 Serg. & Rawle, 432, contains a recognition to its full extent, that the sentences and orders of a Probate court’ are final and conclusive. The case of Jennison v. Hapgood, 7 Pickering, 1, is also directly in point. The orders and decisions of the Pro *740 bate court in Massachusetts, in matters over which it had jurisdiction, was held to be conclusive, although they were attacked as they are in this case by a bill in chancery for that purpose.
But it is insisted', that even if there was a judgment or sentence of the county court, these complainants are not bound by it, because they were not parties, and could hot therefore have taken an appeal. It is altogether competent for the law to prescribe any mode of bringing parties into court. It máy be done' by process direct, or by notice. Publication is constructive notice to all persons interested, and when such mode of giving notice is prescribed by law, all parties are presumed to be duly notified. By the statute, an administrator is required to give forty days notice of his intention to settle his accounts by publication. The law has prescribed this as the mode of putting parties interested on their guard. Time and opportunity is thus given them to protect their rights, and all persons interested are parties to an administration from the beginning. The plea avers that notice was given, and it is now too late for the parties to say they were not notified; .the demurrer admits the allegations in the plea.
It is further insisted that Winthrop S. Harding was not bound by the decree, because he was a minor, and that the complainants, claiming as his assignee, stand in the same-situation as he would if litigating this matter. We are not called oh to decide on the rights of Harding; whatever they may be, it is clear that these complainants cannot claim to be substituted to all his privileges. One of the complainants was the administratrix, who presented the final account. If it was erroneous, it was her error, and she cannot now take advantage of it. Whether she knew any thing of the account or not, it was in her name and must be regarded as hers. To say the least of it, if it was wrong, it was her pegli-gence. In any aspect, it is obligatory on her. It is- an estoppel in law, and in whatever right she may claim, concludes her, and her husband who claims in .the same right. It is now the case of an administrator seeking to set aside his own final account which was presented and decided on as correct, for an error which was then in favor of the administrator, and prejudicial to the estate, *741 on account of subsequently acquired rights. It is like the case of a warrantor seeking to recover against his warranty by title subsequently acquired.
Another ground taken in support of the relief prayed, is, that the error occurred by mistake. Although mistake is a subject of equity jurisdiction, yet it is not every mistake .that equity will relieve against. The mistakes which may be corrected, occur mostly in matters in pais, in the execution of instruments, or the defective execution .of powers, &c. But where there has been an adjudication by a court of competent jurisdiction, neither mistake in law or in fact can be corrected by original proceeding.' If this could be done, litigation would be interminable. Hence, the general rule is, that equity will not relieve against the negligence or inattention of parties in a court of law. 1 Maddock, 77. The mistake here complained of is one which the complainant was instrumental in causing. It arose, if at all, in a matter with which -she is supposed to have been perfectly cognizant, and for the correction of which there was a plain and easy remedy at law. But supposing that she was ignorant of the errors in the account, still it amounts to nothing more than a case of negligence. It was her business to be informed, and if she omitted it, she must abide the consequences.
If this view of the case be correct, and we cannot doubt but it is, then relief is sought by original bill, against a judgment fully and finally made by a court having full jurisdiction of the subject matter and of the persons, when all parties interested were legally notified of the proceeding, and attended by no circumstance other than the mere negligence of the party, which lays a foun ¡ dktion for the interposition of a court of chancery. ' Under such circumstances we think the plea should have been received as a sufficient bar to the relief, and the decree of the chancellor must accordingly be reversed.