Rogers, J.
(after stating the case) delivered the opinion of the court as follows:
The more correct manner of introducing the first question for consideration, would have been, by a plea of nul tiel record. The question, however fairly arises on the face of the record; which is, whether any suit can be sustained, on the recognizance taken in. the Orphans’ Court, under the circumstances'stated? The inquest and appraisement were in pursuance of the directions of an act of assembly, relating solely to intestates, and not to cases of testacy. The Orphan’s Court has never been considered a court of general jurisdiction. They have no power, unless given by act of assembly, and no law has been produced giving them the authority exercised in this case. ■ The will of Jonas Groff, directs tliat the land shall be appraised, but not by whom, nor in what manner. As then it appears on the record, that this was a proceeding not warranted by any act of assembly, it is the opinion of the court, that this recognizance is totally void. It has however been ingeniously contended, that although void as a recognizance, yet it may be supported as a stipulation between the parties Without expressing any opinion on this point, it niay be sufficient to observe, that the plaintiffs have not so considered it, in this action, but have brought their scire facias, upon a void recognizance, in the name of the President of the Orphan’s Court, successor of Walter Franklin, against the present defendants. They cannot now be permitted to turn round, and sustain themselves, by alleging that it is a stipulation and not a recognizance.
The defence relied upon in the District Court was that the lands for which the recognizance was taken, had been subsequently sold, under .an order of the Orphan’s Court, to pay the debts of Jonas Groff, the testator. If this wére so, it would be most manifestly unjust, that the recognizors should be bound to pay the money, when they had lost the land, and more especially when the land had been sold under the decree of he Orphan’s Court for the payment of the debts of the testator. To avoid this decree, directing and confirming the sale of this land, the evidence, which has been *184 particularly and specially detailed, was offered by the plaintiffs. There is no principle better settled, than that the judgment or decree of a court of competent jurisdiction, cannot be questioned in a collateral suit. Here Thomas Wenrich the executor, settled his administration account, in which there was a balance of nine hundred and fifty-seven dollars and twenty-six cents against the estate, and in favour of the accountant. To pay these debts, on the petition of Thomas Wenrich, the court ordered a sale of the lands of the testator, which sale has been confirmed by the Orphan’s Court This decree, remaining unreversed, and unappealed from, the District Court were asked by the parties to the decree, to review the proceedings., To permit this would render uncertain the most solemn acts of a court of justice, if at any time, they would be liable to an investigation by parol testimony in a collateral suit. When aggrieved, the parties should appeal,.or reverse the proceedings. And in this case, it is no answer to say, that they were minors, and that the guardians would not act. If the guardians neglected or refused to do their duty, it is a matter between them and their wards, with which we have nothing to do in this suit.
Without particularly examining the cases of Messinger v. Winter, Binn. 105. The Lessee of Snyder v. Snyder, 6 Binn. 483. and a láte case, decided at Pittsburg, M'Pherson v. Cunliff, 11 Serg. & Rawle, 422, or expressing any opinion how far these eases are reconcileable with each other, I think I may with the utmost safety say, that a decree of an Orphan’s Court, unre-versed and unappealed from, cannot be questioned in a collateral suit, unless in cases of fraud, or where the defect plainly appears upon the face of the proceedings themselves.
In this case, it cannot but be observed, that there is no allegation of fraud. It is left- to be inferred from the circumstances. Whenever a party relies upon fraud, it ought to be distinctly and positively alleged,' upon the first principles of justice, that the person to be affected may have a full opportunity of meeting and disproving the charge.
As then, there was no allegation of fraud, and the decree of the Orphan’s Court was good on its face, unreversed and unappealed from, I am of opinion, there was no error, in refusing the evidence, contained in the plaintiffs bill of exceptions.
Judgment affirmed.*

 The following- opinion of Judge Washington, delivered on the Equity side of the Circuit Court of the United States-, for the Eastern District of Pennsylvania, is in accordance with the principles established by this court.
Thomas M. Blount Thomas Darrach, and Thomas Bradford, jr.
The bill stated that the plaintiff was the husband of Elizabeth Knight, the daughter of Daniel B. Knight, formerly of Philadelphia county, who, on the 22d of April, 1808, conveyed to James Darrach, Thomas Bradford, and John Boiren, a certain *185 real estate in trust for himself for life, and after his death, to the use of his said daughter Elizabeth, in fee tail, and in default of issue, to the use of the children of Michael ICmght and his sister Elizabeth, as tenants in common, in tail, and in default of such issue, then to the use of the children of Daniel P. Knight and his heirs That the said Daniel P, Knight died in the year 1809, leaving his said daughter a minor, to whom the aforesaid James Darrach was appointed guardian, and who continued to act as such until his death : That after his death, his executor, E. Dar-rach, ’filed' an account of the guardianship of his testator, in the Orphans’ Court, for the city and county of Philadelphia, and auditors were appointed to audit and settle the same, who reported a balance to be due to the said infant Elizabeth .Knight, by the estate of her late guardian, of gl,897, to the first of February, 1816: That of this balance Ae executors paid to Wm. Bradford, jr. who had been appointed the guardian to the said Elizabeth, after the death of James Darrach, the sum of j§l,798, 49, on the 9th of November, 1819: That at the time of the aforesaid settlement of the said guardianship, account, the said Elizabeth . was an infant, and no attention to the said settlement, was paid by her guardian, Wm. Bradford, jr.
The bilí then charged that the account so settled, was replete with errors and omissions, particularly in the following instances: 1st. That no interest was credited the-ward on the sums received by her said guardian from the commencement of the account to the 1st of February, 1815. 2d. That no rents were credited for a house, No. 361 North Front Street, in the Northern Liberties, except a small amount, much less than was received by her guardian, or if mot received, they were lost by the negligence of her guardian. 3d. That there were various deficiencies in the account, as to rents of a wharf and lot in the Northern Liberties, and that the account throughout was imperfect. The bill called upon the defendants, the executors of James Darrach, to discover whether rents and other sums of money, belonging to the ward, were not received by their testator, beyond those which were credited in the aforesaid account; and whether divers sums of money did not remain in the hands of their testator from time to time, and whether no interest was allowed in the said settlement, and whether a sum of money was not withheld by the executors from her guardian, Wm. Bradford,, under the pretence of the same being due by the said Wm. Bradford, in his individual capacity, to the estate of James Darrach, — to produce the books of their testator which contained any entries or accounts respecting the estate of his said ward. The prayer of the bill was for an account of the guardianship transactions of James Darrach.
To this bill thfe defendants filed a plea, setting forth that on the 20th of October, 1809, tlie Orphans’ Court of the city-and county of Philadelphia, on the petition of *186 the grandmother of the said Elizabeth Knight, then seven years of age, appointed Jumes Barrack her guardian, the duties of which office he undertook and exercised until thetime of his death, which happened on the 16th of February, 1816: That on the 17th of September, 1817, the said Elizabeth, being then of the age of 14 years, chose, and the Orphans’ Court appointed, Jfm. Bradford, jr. and Thomas B. Bar-' rack, her guardians, who continued as such till she arrived at full age: That the defendants, as executors of James Bairach, filed, in the Orphan’s Court, the account of their testator, of his guardianship of the said Elizabeth, and on the 19th of July, 1816, auditors were appointed by the said court, to settle and report on the said accounts: That one of the guardians of the said Elizabeth appeared before the auditors and examined the said account with the auditors, altered some of the items in it, charged interest on monies in the hands of the guardian, thereby increasing the balance due to the ward, which account, so altered and examined, was reported to the said court, and was by the decree of the said court allowed and confirmed, and the same remained unappealed from and unreversed on error, which settlement, report and decrees, the defendants, after protesting that there are no errors in the same, pleaded in bar of the bill and of the account and discovery thereby prayed.
Bayard and J. B. Ingersoll, for the complainant.
Bzoight and T. Sergeant for the defendants.
Washingtok, J. This cause having been set down to be argued on the plea, the allegations contained in it must all be taken as true. The case which the plea presents is, that after the death of James Barrack, the guardian, whose accounts the bill seeks a settlement of, his executors filed in the Orphans’ Court the guardianship account of their testator, which was by order of that court referred,to auditors to settle and report. That one of the guardians of the then minor, in whose right this suit is brought, who had been previously ajjpointed to that office by the Orphans’ Court, appeared before the auditors, and examined the account filed by the executors, as also the vouchers, altered tome of the item's, charged interest on monies in the hands of the guardian belonging to his ward, thereby increasing the balance in favour of the ward, and that the account thus examined, altered and settled, was reported by the auditors to the Orplufts’ Court, where, by a decree of the said court, .it was allowed and confirmed, and that-the said decree i'emains un-appealed from and unreversed on error. The plea further alleges, that James Barrack did not, in his lifetime, nor have the defendants since his death, received any monies belonging to the estate of the plaintiff’s wife, other than those credited in the , defendants’ account, and that the balanfce due on that account, has been fully paid and satisfied.
The single question which arises upon the above facts is, whether the account of the guardianship of James Baivacp, which, by the decree of the Orphans’ Court was allowed and confirmed, is conclusive or not, so as to be a bar in the discovery and relief sought to be enforced by this bill ?
The general principles of law in respect to the conclusiveness of the judgments and decrees of the domestic tribunals of the county are well settled, and perfectly intelligible. A judgment or decree of a court of competent jurisdiction, directly upon the point, is conclusive between the same parties, or their privies upon the same matter coming directly in question in another court of concurrent jurisdiction. This rule is founded upon considerations, as well of abstract justice, as of public policy, which forbid the litigation of any matter which has been once fairly determined by proper and competent authority, between the same parties, or those standing in the relation of privies to them. If the matter, or the parties, be different, the former judgment or decree, if admitted in evidence at all, as in particular ■cases it may be, can be so only as prima facie evidence, but not conclusive. And so extensive and universal is this principle,- that it includes the judgment or determination of tribunals having competent authority to decide, whether they be of record or not. Where the matter adjudicated is by a court of petuliar and exclusive jurisdiction, and the same matter comes incidentally before another court, the sentence of the former is conclusive upon the latter, as to the matter directly decided, *187 not only between the same parties, but against strangers. Duchess of Kingston’s Case, 11 St. Tr. Stra. 481. Dong. 407. 2 H. Blac. 416. Harg. Law Tracts, 466.
- The subjects of inquiry thenin the present pase are : Had the Orphan’s Court jurisdiction of the matter on which they made {heir decree: Is that the same matter which tliis bill seeks to litigate in this court i Are the parties the same, or in pri- . vity with those who were parties in the Orphans’ Court: And lastly, how far is that decree binding on the plaintiff in consideration-of the infancy of Éüxabetk Knight at the time it passed ?
1. By the act of assembly of 1713 of this state, “ For establishing- the Orphans’ Court,” they are declared toibe courts ofrecord, with power to call before them, executors, administrators, guardians and others who are intrusted with or accountable for, property real or personal belonging to any orphans, and cause them to exhibit true and. perfect inventories and accounts of the said estate. By the 3rd section of this act, the Orphans’ Court, upon complaint being made (hat any person having tho care or trust of a minor’s estate is like to prove insolvent, or shall refuse or neglect to exhibit true and perfect inventories, or to give full and just accounts of the estates come to their hands or knowledge, is required to cause such guardian or tutors of orphans, or minors, to give such security as the court may think proper. The 6th.section provides that guardians shall not be liable for interest, but on tho surplusage of the estate remaining in their hands or power, belonging to the minor, when the accounts of their administration are or ought to bs settled and adjusted before the Orphans’ Court, or register general respectively. The 8th section invests that ' court with' a power to issue attachments'for contempt against those who have been summoned to appear therein, and to enforce obedience to their warrants, sentences and orders concerning any matter cognizable therein as fully as any court of equity cau do, the party aggrieved by any final sentence of the said court, being, by the succeeding section, allowed an appeal to the Supreme Court. The 11th section declares that, when any minor shall attain to full age, if the person intrusted or concerned for him as before mentioned, shall have rendered his accounts to the ..Orphans’ Court according to the direction of this, and other acts, and paid the 'minor his full due, the minor shall acknowledge satisfaction in the said court, and If he refuse to do so, the court is required to certify how the said person concerned has accounted and paid, which shall be a sufficient discharge of the guardian, &c. who shall so account and pay, and thereupon his bond shall be delivered up and cancelled. By the 10th section of the act of 1807, where the personal estate of a minor is insufficient for his maintenance and education, the Orphans’ Court may - allow the guardian, to sell so much of the real estate as may be necessary for those" purposes; and, in a note to Smith’s edition of the laws, vol. Í. p. 87, he observes that the persons directed to sell are most commonly.obliged by the acts authorizing the sale, to exhibit their accounts for settlements in the Orphans’ Court.
Upon a view of the above provisions respecting the Orphans’ Court, I could not entertain a doubt, were the question now before me for judgment for the first time, that that court has jurisdiction to settle, and to allow, and confirm the accounts of guardians, and finally to decide upon the different items of those accounts, subject to the reversing- and correcting jurisdiction of the Supreme Court. But if - this point were at all doubtful, I take it to be settled by the decision of the Supreme Court in Richards’s case, 6 Serg. & Rawle, 462. That case came on upon a rule to show cause why the'ward should not be permitted to appeal on giving security for costs only; in which it was decided, that an order of confirmation by the' Orphans’ Court, of a report of auditors on the final settlement of a guardian’s account, is a final decree, but that that court has no authority to go further, and to decree payment of a balance from the -ward to the guardian on such settlement. “ It is going far enough,” observes the learned judge, who delivered the opinion of the courts to say the confirmation of the account shall discharge the guardian, without di'rectly involving the ward in personal liability.” It is added, “the Orphans’ Court is ex officio the protector of the ward, and interferes no further than to compel the guardian to account with him.”
2. The next inquiry is, whether the matter decreed by the Orphans’ Court, is the same which this bill seeks to litigate ? Upon this subject there can be no *188 doubt. The matter presented to that court by the executors of James Barrack, for its consideration and decision, was the guardianship accounts of the testator, of the estate of his ward, Elizabeth Knight. That account was referred by the court to auditors, who made their report, stating the balance due by the defendant to his late ward; and this report was by a decree of the court allowed and confirmed. The object of this bill is to open that account, for the purpose of enabling the plaintifi' to surcharge and falsify it in the particulars stated in the bill. The prayer of the bill, both as to discovery and relief, is confined to that object.
3. The next inquiry is, was Elizabeth Knight, in whose right the plaintiff claims, a party to the proceedings in that court, upon which the decree of confirmation was passed?
The plaintifi'states that her guardian, duly appointed by thé Orphans’ Court, appeared before the auditors, litigated the account presented by the executors, and by objections successfully made to some of its items, increased the balance, which was finally reported and decreed in favour of his ward. Will it be doubted that he legally represented his ward, so as to make her a party to the proceedings before that court ? By the 7th section of the act of 1713, before referred to, 1 Smith, 84, the Orphans’ Court are authorized to appoint guardians, next friends or tutors over minors; who shall be allowed and received, without further admittance, to prosecute and defend all actions and suits relating to the orphans or minors in any court of the province.
Lastly, it is to be spen how far the decree of the Orphans’ Court, made during the minority of Elizabeth Knight, is binding upon her, or upon those claiming in her right.
The general rule of the courts of equity is, that no decree can be made against an infant, without giving him a day to show cause, after he comes of age. When he is plaintifi', he is, unless under extraordinary circumstances, as much bound by a decree, and as little privileged as an adult. And even in the former case, he will not be permitted to travel into the account, or where a foreclosure has been decreed, to redeem by paying what is reported due, but is only allowed to show an error in the decree. If at law, he suffer a recovery, he is so far bound, that he cannot enter on the land until he has reversed the judgment upon writ of error.
It is probable that, in this case, the plaintiff^ in right of his wife, might be permitted in the Orphans’ Court to show cause against the decree of that court, rendered during her infancy, by showing specific errors in the account; or that the subject might be re-examined in the Supreme Court by appeal or writ of error. As to this matter, however, it would not become me to give an opinion. But it is clear to my mind, beyond all question, that the correctness of the decree of the Orphans’ Court cannot be examined into by this court, which can only claim to exercise a concurrent jurisdiction, to compel guardians to settle their accounts, tvhere they have not done so before some other competent forum. .
The plea therefore averring that the balance decreed by the Orphans’ Court has been paid, and relying upon that decree in bar of the other parts of the bill, is, what ¡t professes to be, an answer to the whole bill; and consequently I must decree the bill to be dismissed with costs, but without prejudice to any remedy which the plaintifi'may think fit to pursue elsewhere.