[Philadelphia, February 15, 1833.]

## FOX and Others *against* WINTERS and Another.

### IN ERROR.

Under the act of *April* 1st 1811, the Orphans' Court has no power to order a sale of the real estate of a testator, until the final settlement of the administration accounts.

But irregularities in the proceedings cannot be inquired into in a collateral suit, if it substantially appear that the accounts were finally settled and confirmed previously to the order of sale.

Nor can the purchaser at such sale be affected by the fraud of the executor in settling his accounts, unless it appear that the purchaser was a party to it or had notice of it before or at the time of the sale.

Writ of error to the District Court for the city and county of *Philadelphia,* in an action of ejectment for a messuage and two lots of ground in the *Northern Liberties* of the city of *Philadelphia,* brought by the plaintiffs in error, *Joseph Fox* and others, against the defendants in error, *Garret Winters* and *George Weaver.*

The plaintiffs below claimed under the will of *Joseph Fox,* deceased, and endeavoured to impeach the regularity of proceedings in the Orphans' Court instituted on the application of *Frances Fox,* executrix of *Joseph Fox,* for leave to sell the real estate of the decedent, and the validity of the sale made in pursuance of those proceedings, under which the defendants claimed.

A further statement of the facts and the arguments of the counsel is rendered unnecessary, by the opinion of the Court, which, after argument by *Conard* for the plaintiffs in error, and *Chester* and *Chauncey* for the defendants in error, was delivered by

Rogers, J.—The defendants derived title from a proceeding in a case of testacy in the Orphans' Court, under the second section of the act of the first of *April,* 1811.

That act differs from the act of 1794, (which relates to the estates of intestates) in this, that previous to the order of sale, it is required that there should be a final settlement of an administration account in the Orphans' Court. A final settlement contains an exhibit of the personal estate of the testator; and when the executors intend to make it the foundation of an order of sale, there should be an exhibit or schedule of the debts due from the estate. This is required, that the Court may judge whether there are sufficient effects to pay, and satisfy the balance appearing to be due; and also that they may be enabled to determine, what part of the real estate it may be necessary to sell for that purpose. The settlement if done in proper form is made before the Register: and after due notice (as is directed in the act of 1794) it is sent to the Orphans' Court for confirmation and allowance. After confirmation the executor petitions

(Fox and others *v.* Winters and another.)

the court for an order of sale, whose duty it is to refuse the order, unless there has been a final settlement of an administration account, and unless it appear that there are not sufficient assets to pay and satisfy the balance appearing to be due. The Orphans' Court, will take especial care to prevent injury to minors, by ordering so much only to be sold, as will be sufficient to pay the debts, having also a due regard to the interest of all those who may have an interest in the estate. The great difficulty which we have had, is, whether the jurisdiction of the Orphans' Court attached, by a confirmation of an account, such as is required by the act. It must be admitted, that there has been great irregularity in the proceedings, and it is confidently expected, that the several Orphans' Courts of the commonwealth will pay more attention than was formerly considered necessary in this branch of our judicial polity. I have examined the case with attention, and have come to the conclusion (not without great hesitation) that the account exhibited to the register was substantially confirmed by the Orphan's Court. It appears to have found its way into the court, (though in an informal manner,) and was made the foundation of the order of sale. Indeed, the court seems to have taken unusual pains to ascertain the facts necessary to the order. The opposition to the sale proceeded from *Mary Elliot*, one of the children of *Joseph Fox*, who are interested under the will of their father in the property, for which the ejectment is brought. On her application the order of sale was suspended, and auditors were appointed, to report the facts to the court. They reported the net income of the testator's estate to be ninety-two dollars and twenty cents, and that there was a balance in the hands of the executrix of personal estate, according to the appraisement, as stated in the register's certificate, of two hundred and two dollars. The report of the auditors was confirmed by the court. It is clear, that the account exhibited to the register, was before the auditors, which on examination they found to be correct, and on that basis made their report. There was then a substantial, though it must be confessed an informal, confirmation of a final settlement of an administration account, so as to give the Orphans' Court jurisdiction of the subject-matter. The court were not content with the report of the auditors, but at the instance, as I suppose, of the heirs, and very properly, they directed the auditors further to inquire whether the debts claimed by the creditors, were justly chargeable to the estate, and that they should furnish the court with the evidence on which they founded their opinion. In pursuance of the order, the auditors made a report of the evidence, and also, that in their opinion, the estate of *Joseph Fox*, deceased, was chargeable with the payment of the debts, as presented in the schedule from the register's office, amounting to one thousand nine hundred and sixty-eight dollars and twenty-five cents. This report must also have been confirmed, although not noted on the record, for we find that the order of sale is then suffered to go, without further opposition in that court, or an appeal to this. If then the court had juris-

(Fox and others *v.* Winters and another.)

tion to order the sale, we cannot now inquire into the irregularities which attended the proceedings.　The decree of the Orphans' Court, is conclusive on the subject-matter.　Whatever doubts may have existed formerly, there is none now, that when the Orphans' Court have jurisdiction, the decree is conclusive, and cannot be questioned in a collateral suit, unlesss there is fraud.　*Kennedy* v. *Wachsmuth*, 12 *Serg. & Rawle*, 171.　*M*'*Fadden* v. *Geddis*, 17 *Serg. & Rawle*, 336.　*President of the Orphan's Court of Dauphin county for the use of Groff* v. *Groff*, 14 *Serg. & Rawle*, 183.　*M*'*Pherson* v. *Cunliff*, 11 *Serg. & Rawle*, 422.　*M*'*Lenachan and wife* v. *Commonwealth*, 1 *Rawle*, 357.　I had some difficulty on the ground of the notice which is required under the act of 1794, which is the same, whether the person died with or without a will.　There cannot, however, I think, be any reasonable doubt, that all the parties had notice.　Two of the four children, all of whom were adults, were present before the auditors, and threw every obstacle in the way of the application for the order of sale.　We must presume that the court would not decree a sale, without giving every person in interest the opportunity of a hearing.　A purchaser at a judicial sale has a right to act on the supposition that the court has done its duty. We have room for the presumption of notice, because a sufficient time elapsed, from the time of filing the accounts in the Register's Office, viz. the 5th *Feb.* 1812, and its confirmation on the 17th *June*, 1812.

The plaintiffs offered to prove fraud practised by the executrix in settling the accounts.　This they attempted to shew before the auditors.　We think the court were right in rejecting the testimony, unless the plaintiff could further shew the participation in the fraud by the purchasers, and notice to them, at the time of the sale.

Judgment affirmed.