Dissenting Opinion.
Bermudez, C. J.
Guided by.the light of the jurisprudence of this State, I fail to see that the will of Joshua Pearce contains any prohibited substitution.
To my mind, it is apparent that, when he bequeathed to his wife his plantation and movable effects, ‘‘ to have and to hold during her natural life,'1'' he merely intended to give her the usufruct of that property, and that when he bequeathed to his grandson, Joshua Pearce, Jr., the same things, at the death of his wife, he meant to give him the naked ownership ■ first, and the absolute ownership next, at the demise of his widow.
In the interpretation of last wills, the intention of the testator must first be ascertained, and testamentary dispositions have to be understood in the sense in which they can have effect, rather than that in which they can have none.
In construing a will, it has been said that the intention of the testator is the polar star by which the Court should be guided, and it is the duty of those who have to expound it, if they can, ex fumo dare lucem. In other words, the first thing to be done is to ascertain what was the intention at the time of making the will, and then to carry out that intention, find out quod voluit by interpreting quod dixit.
Not only are these fixed and established rules by which Courts will be guided, but there are certain technical expressions of which the legal interpretation is different from that which in ordinary language would be attributed to them, and consequently in a will, in which such expressions may occur, may, in some cases, be made to operate in a manner different from that which may, apparently, by close and sharp analysis and criticism, be claimed to have been intended by the testator, the duty of the Court being to give effect to all the words of the will, and to construe technical words in their proper sense, when they can consistently be so understood, to carry out a legitimate intention, particularly where the technical words have a popular sense to the same effect. In testamentis plenius volwntates testarntimn interpretantur. D. 50, 17,12; 7 L. 230 ; 8 L. 43; 2 A. 581; 7 A. 127; 7 R. 481.
Where a testamentary disposition is susceptible of two interpretations, one which will destroy it, and another which will execute it, the latter should unhesitatingly be preferred andcarried out. Melius valeat quarn *563 pereat, for tlie obvious reason that it must be presumed that the testator intended to do that which was legal, rather than that which was prohibited. 7 U. S. 416; 4 L. 504; 4 R. 409; 8 A. 113; Toullier 5, No. 44; Duranton 8, No. 5162; 3 Marcadé, 418, 428; Merlin, Vo. Sub. Fid. Sec. 8, No. 7.
The law of this State expressly permits dispositions inter vivos and mortis causa, by which the usufruct is given to one and the naked ownership to another. R. C. C. 1712, 1713, 1522.
It is striking that there exists, nowhere, any authoritative definition of a prohibited substitution, none is found, either in the Napoleon or our own Code, in the French, or our jurisprudence.
It may, however, well be stated to be a disposition by which a testator intends to bequeath thefvM ownership of a thing to one person, charged to preserve and to return it, at his death, to a third person who, then only, inherits the same. In other words, it is a disposition by which, after giving absolutely a thing, the testator arrogates to himself, as though he had not divested himself of title to it, the right of settling the succession of his legatee, by giving again the same thing to another legatee who is to own it, at the death of the first legatee.
The thing intended to be received by the second legatee must be the same thing that was designed to be bequeathed to the first legatee, with all the rights which the first legatee had received, and which the testator possessed, at his death, to that thing.
The testator, in this case, has not bequeathed the full ownership of the land and movables to his wife. The very qualification of the length of her tenure repels the proposition, for it is of the essence of the right of ownership that it b& perpetual.
A true and crucial test, to be applied in such inquiry, is:
Whether, or not, the first legatee, gramatus, who takes immediately from the testator, would, by the predecease of the second legatee, who takes mediately from tlie testator, through the first legatee, acquire an absolute, indefeasible title to the thing bequeathed ; in other words) whether, or not, by the death of tlie second legatee, before the first legatee, (both surviving the testator) the first would remain such owner of the thing as the testator himself was iii his lifetime.
Where the answer is in the affirmative, there exists a substitution ; where it is in the negative, there exists none.'
Now, in this instance, would Mrs. Pearce, by the death of Joshua Pearce, Jr., before her, become the absolute owner of the plantation and movables ? 'Evidently not.' The conclusion irresistibly is, that there exists, therefore, no’ prohibited substitution, and that the will is perfectly valid. ' . ■
*564 Tlie assumption that he gave the imperfect ownership is likewise fatal. That sort of ownership being recognized, as it appears to be, it follows, that it can be acquired and, therefore, transferred, as there is imposed no limitation touching the cases in which it can be conveyed, and can thus accrue. If this can be done, to take effect' during life, there is no perceptible reason why it should not also occur, to take effect after life. I fail to perceive that the law concerning undefined, prohibited substitutions, extends to such cases. The law prohibits certain substitutions, not all, for reasons of public policy, which are well known and need not be enumerated, not one of which appears to exist in the present instance.
At the death of Joshua Pearce, it could not be difficult for the State assessor and tax collector to ascertain, at first sight, that Mrs. Pearce was the usufructuary, and Joshua Pearce, Jr., the naked owner of the property bequeathed. The first could lose nothing on account of uncertainty in the. ownership of the things given by the testator.
To say that the will of Law and that of Pearce are dissimilar, because the former is expressive of the right of use and enjoyment by the legatee, while the latter is reticent on the subject, is to gratuitously negative the undeniable proposition, that legacies are essentially and invariably excluded from those privileges, unless when distinctly announced. The right to use and enjoy are clearly implied in this- case.
A legacy of property to have and hold the same during life, is a life estate at common law, equivalent to an usufruct in the Roman, or civil law.
There does not exist among the reported cases. adjudicated by this Court, any instance in which such a legacy ever was construed as one of ownership of any kind, and was consequently annulled, as containing a prohibited substitution. Neither have I been able to find a solitary case in which a testamentary disposition was avoided on that ground, by less than a unanimous court, so true is it, that this should be done in glaring cases only.
I think that the will of the deceased can legally and conscientiously be saved from destruction and annihilation by the provision of the Code, which permits the giving of the usufruct to one, and the naked ownership to another.
The objection that the first legatee is charged to preserve and return, is not a test, for that is clearly the duty, the obligation of the usufructuary, as specially declared by law. R. C. C. 567, 594; 18 A. 285.
As was well said by Mr. Justice DeBlane: “The last will of those who depart this life is the last expression of their love, friendship or gratitude, and where it violates no law, that will, by far the most *565 sacred of all things,- should be as respected as the grave of the dead.” 30 A. 217.
Unless this Court has flagrantly misunderstood and applied the law in its previous adjudications, it is difficult to perceive how the will of Joshua Pearce can be legally destroyed and blotted out of existence. 31 A. 456 ; 10 A. 28 ; 5 A. 552 ; 3 A. 494; 1 R. 115 ; 4 R. 176, 409; 12 R. 660; 13 A. 197; 7 A. 395.
I, therefore, dissent from the opinion and decree.
Levy, J., absent.